Good morning, may it please the court. My name is Rosemary Born on behalf of the Director of the Department of Corrections. The state court's decision applying Strickland v. Washington in this case and finding counsel's performance was reasonable and that the petitioner was not prejudiced as a result was not an unreasonable application of federal law, nor was it based on an unreasonable interpretation of the facts. Thus, the district court's finding to the contrary in this case was incorrect. Framed correctly, the issue in this case was whether counsel's performance was deficient or the petitioner was prejudiced as a result, not whether there was a confrontation violation in this case. Counsel can and often does make tactical decisions to waive constitutional and those can be valid tactical decisions. Here, the affidavit identified three ways in which she rendered reasonable performance. One was that she said she did reasonable investigation. The second was that... Let's go to the first one. She did reasonable investigation. It sounds like a conclusion. I think it's up to the court to determine whether it was reasonable or adequate. What did she say she did? She said she reviewed discovery materials. She said she reviewed the materials and she looked at the evidence in the case. She looked at the evidence. She never said she even looked at the certificate. She said she conducted reasonable investigation. Are you answering my question? Is that correct? She didn't say that in her affidavit. Right, she doesn't. And that is, as the French would say, the piece de resistance in this case, isn't it? The certificate? Well, it's the evidence in the case. That's what it's all about. Certificate that she allowed to come in without any expert, right? Isn't that the case? Well, she didn't. She reviewed all the discovery materials. Is it not the main thing? Well, in every drug case, in every case, the certificate is unnecessary. In this case, this was the sole thing. No, it wasn't. I disagree with that. There was an admission that he had made a mistake when the victim went and confronted him and asked him why he broke into his house. What was the mistake? He said mistake. That's not it. That's a clear admission. It's an admission. The court considered it to be an admission. Maybe it was a mistake that he had the person as a friend, that he got so close to him that he would be in the curtilage of his accusation. Just said a mistake. He didn't say he did, so that's not clear. Really, the case was that she allowed the fingerprint report to come in without the expert. She allowed that. That's correct. That's what I'm saying. That's the main thing, and her investigation didn't even say she ever looked at it. But she reviewed all the discovery materials, and clearly, that would have been... She didn't say all of them. She said the discovery materials. That could be the, the, the, the article, definite article of what? What did she look at? Don't know. But clearly, under Virginia law, the prosecution is required to turn over the certificates of analysis prior to trial. It would have been in the discovery materials. What do we, how do we know that from this record? Well. From this record. You don't. We don't. There you go. Go ahead. What was your argument? But, I mean, her actions are presumed to be correct. She said she did reasonable investigations. Her actions are presumed to be correct? Is that... Her performance is presumed to be correct under Strickland. No, that's not true. Reasonable. Yes. Thank you. Let's take the law then, counsel. I would also argue that to the, on the contrary side, the petitioner proffered no evidence that any other investigation would have resulted in, in undermining this fingerprint analysis. And it is his burden under Strickland to demonstrate that the investigation was inadequate. It is his burden to... How do we know what will come in? It's not about just the content here. A lot of times when you get ineffective assistant counsel, you have to say what would have occurred to contradict it. But isn't this a question of whether or not it would have come in at all? Even if it is correct. In this case, as it is before us, the issue is, let's assume it was bad. She should have kept the bad stuff out. And she didn't. But there's no evidence it was bad, your honor. There was no evidence there was anything wrong with the certificate of analysis. It was bad because the evidence that came in was that it was his fingerprint. What are you saying? That was the result of not making the objection, counsel. What case are you talking about? What I'm saying, your honor, is that while it may not have been favorable to him, there's no evidence that there was anything wrong with the fingerprint analysis. There's no evidence that could have been undermined by any cross-examination of this. How do we know who would have gotten in? Because it's admissible under 19.2187.1. She's entitled to have the person there. But how do you know in this record that they were in a position to do that? When was it filed? In this record, do we know when it was filed? There's no evidence that it wasn't properly filed. So we don't know whether under Virginia law it was timely notice. You have to give timely notice of Virginia law, correct? That's correct. Do we know from this record that it was timely, that it would have been allowed to come in? She had decided prior to trial, I did a pre-trial investigation. Read that affidavit that it said, prior to trial, I decided I'm not going to object. She said she conducted adequate pre-trial investigation into the fingerprint and she had no reason to question its admissibility. Keep going. I want you to say, you probably to the court that she said, I've already decided before the trial, I'm not going to put it in short. That's the point at which she would have had to decide that. No, no. You said she said it. Now tell me where it says that. You represented to the court that that's what the said that. She said she conducted pre-trial investigation of the fingerprint and she had no reason to question its admissibility during that pre-trial investigation. Okay, keep going. Read what you said, you probably to the court she said. It's not in there. That's, that's, that's what I'm, that's how I'm answering your question, your honor. Otherwise you asked my question that you, you didn't represent the record. She didn't say I had decided before. Because for example, counsel, I've tried criminal cases in Virginia for over 20 years before I was on the bench. You could make some decision. The question is, well, it may or may not be, but you always wait to see what happens in this record. How do we know in the morning of or whatever the situation was, they had done something inappropriately. You might decide then, I am going to object to it, correct? Well, but she had, she said, I conducted adequate pre-trial investigation. I had no reason to question the admissibility of the fingerprint. Did she say admissibility? She said admissibility. Okay. I had no reason to question the admissibility of the fingerprint. Then she said, further on, the undersigned made the decision not to challenge the admission of the certificate of analysis since no basis existed for doing so and nothing appeared to be gained by challenging the admission of the certificate. So she clearly is saying that she did her pre-trial investigation. She didn't see anything wrong with the certificate and she didn't see any basis for challenging it. And as we know under Melendez-Diaz, that can be a reasonable tactical decision. What was the tactical decision in this case? Tactical decision was not to challenge the admissibility of the fingerprint and have the just cemented how good the fingerprint analysis was. There was nothing wrong with this fingerprint. She did investigation into it and didn't find anything wrong with it. And he has proffered nothing to the contrary. Is there any evidence that would contradict her assertion that she had made a reasonable investigation or is there any evidence at this point that would contradict the reliability of the fingerprint? No, Your Honor. And it's his burden on habeas to demonstrate deficient performance. He at the state court level proffered nothing to show that this fingerprint analysis was, that there was any problem with it. He proffered no testimony from this analyst showing that there was any problem and that person needed to be there. And he proffered, you know, nothing to show that there was any kind of problem at the lab with the way that this was done. If she had pushed it and pushed it and the fingerprint analysis just got stronger and stronger as the case went on and she wanted the forensic analysis there as well as the investigator, she probably would have been charged with ineffective assistance of counsel. For that, she was between a rock and a hard place and if she had pushed this along the lines that Petitioner had wanted, it would have fortified the state's case quite probably. And she would have been accused of ineffective assistance there. I just, some people are put in a position where they're darned if they do and darned if they don't and that's an and that's, Your Honor, why there is the presumption that her performance was reasonable. You agree with that? You agree with that? That in this situation that she would have pushed? Yes, Your Honor, I do. You know why we know that, you know why we know that's not true in this case? For her own words. She allowed it to come in. As you say, let's assume you're right. We don't want it to be characterized as being stronger by an expert and so therefore we want to soften it by letting a non-expert bring it in, same result. But in her closing argument which lasted, I don't know how long it lasted but it took up less than a page, she called it herself damning. She argued before the court that the evidence that she let in was damning. So I find it inconsistent that we don't put the expert in because we don't make it worse but you tell the judge when you're supposed to be arguing a summation on your client's behalf that the evidence was not only strong but it was damning. Isn't that correct? Your Honor, I see I'm getting close to the end of my time. You're getting close but answer the question. It doesn't matter whether it was damning. I didn't ask you did she say it doesn't matter to you. It doesn't matter to you but it does matter about having an effective counsel. Didn't she call it damning? She may have, Your Honor. Don't you know the record is only about two seconds long? She said it was damning. She said it was damning but that doesn't matter in this case. It doesn't? Just because you call your case evidence against your client because you agree with what Judge Wilkinson said about it would have made it worse, she made it worse by her own mouth. Well that's not the claim of ineffective assistance of counsel that's before this argument was and just but just because the evidence in this case was damning, just because there's a strong case against petitioner doesn't mean that she has to go for broke and try to make some argument that has no validity. There's no basis to challenge this fingerprint evidence on the evidence. I understand what you're saying because it's a question of how much emphasis is going to be given to any given piece of evidence and sometimes uh the counsel gets credit for candor in the jury's eyes by saying I realize that this is evidence and it's uh it's not um this is this evidence and we admit it's not favorable but on the other hand look how many people had been in the dwelling and there were you know there were other fingerprints here and so it's not as if she was asleep at the wheel. She conceded the weak points in the case and moved on as she had to and then fought with what she had which was that there were a whole lot of people that had been in that dwelling. Yes your honor if I and if I could move on. Let me ask this you can move on to my question. If we assume ineffective assistance of counsel do you lose? No your honor. What can you tell me in one sentence why you don't? You're saying if you assume deficient performance. Listen if you assume ineffective assistance of counsel do you lose? I just want to make sure I understand your question your honor. Prejudice in this case. No there's no prejudice in this. Tell me why. There's no prejudice in this case because the correct inquiry as to prejudice in this case is whether or not there would have been um some problem with the fingerprint analysis and there was no proffer of any problem with the fingerprint analysis. There was no proffer that the testimony of this witness would have helped her case at all. There there was absolutely no proffer of any of that so that's that's the correct inquiry of prejudice in this case. Not whether or not if you object to something um at at the time of trial whether you can have an aha moment and keep it out. I thought the question might be if you exclude all that if all that evidence had been objected to and excluded whether or not there's still a reasonable likelihood the person would be guilty of the offense. Well here we do have the admission. No but you didn't even said a thing about the admission. Well you're still talking about there was a wrong test applied to how we determine whether or not she properly objected. That's that's what you think the prejudice analysis. That's that's my argument about the prejudice analysis yes your honor but in addition there's there's the other argument which is that there's still an admission in this case. I mean there is no reason to believe that this would have been kept out because she made if the decision was made I would argue prior to trial. If you want to say something else. I interrupted you. I've said you've answered my question. Thank you your honor. Here we have under and under Melendez Diaz um these are the types of tactical decisions that are made all the time by counsel um and in this case she made a reasonable tactical decision not to object um to this evidence and thank you. I would ask that you reverse the district court's judgment. Thank you. Mr. Vanderblom. Good morning your honors. May it please the court. I'm Tom Vanderblom in Greenville, South Carolina. It's a pleasure to see all of you here today. I find myself in somewhat of an unenviable position because I am here appointed to represent a gentleman who did not need the assistance of a lawyer. Could you speak up a little bit? Yes sir your honor. I apologize. I want to make sure I hear you. Absolutely. Judge Wilkinson, I was saying that I find myself in somewhat of an unenviable position because I've been appointed to represent a man who did not need the assistance of an attorney in the district court below to explain the constitutional error in his state court trial but we sometimes think about pro se cases as being rare and exceptional but when you look at the facts of this case you'll realize that the district court reached the correct result. This district judge had been on the bench for about 20 years at the time of this decision and knew the types of prisoner complaints that come in. As we know, by and large, most of the prisoner petitions are not usually meritless or are not usually with merit. This is an exception and the district court made it clear this was an exceptional and unusual case. There's not going to be some precedent set by this case, some opening of the doors of the jailhouse but I say that because this court . . . . . . ruled unreasonable in order for us to . . . I'm sorry, Your Honor. . . . whose decision would have to be ruled unreasonable in order for us to affirm? I believe the standard under this case would be the Virginia Supreme Court's decision and its interpretation and application of constitutional law and in this case the Strickland standard and as it relates to the Confrontation Clause. And where was the . . . how was the Virginia Supreme Court clearly unreasonable or an application . . . how was its application of clearly established law unreasonable? Yes, sir, Your Honor. That is a core question in this case and I would be glad to get to that in my argument. Just ask it so why don't you answer it instead of plotting the question, just answer it. Your Honor, first of all, let's talk about the first prong of Strickland. Strickland has two prongs. Whether there was a deficient performance of counsel and secondly whether there was prejudice from the deficient performance. The Virginia Supreme Court's decision was unreasonable on both of those issues. Let's talk about the tactical reasons that that would be the deficient . . . Can I interrupt for just one second? Yes, sir, Your Honor. Our review of what the Virginia Supreme Court did, is it de novo? No, sir, Your Honor. I don't believe that's true. I believe that a review of the district court is de novo, but I do believe that the standard of review is whether the Virginia Supreme Court's decision is . . . No, but I'm talking about we don't give deference to the district court. That's correct, Your Honor. It's presented to us de novo. That's correct. Right. Yes, Your Honor. So what the district court did and you've been on the court for 20 years, that's all good and fine, but we're just looking at it fresh and new. Is that correct? Absolutely, Your Honor. Okay, okay. But I do think . . . I'll let you go ahead and go on. But under the AEDPA standard . . . I'm sorry? Both the district court and this court are looking at it under the AEDPA standard. That is correct, Your Honor. But I believe even under that standard . . . There has to be an unreasonable application of fairly established law on the part of the Virginia Supreme Court. And this is one of those cases. It's a rare and unique case. It doesn't happen that often. I don't know. Go ahead. Why don't you tell us what you're going to answer? Well, let's talk first about the deficient performance and why the decision was unreasonable. We first have to get there. We have to talk about what the deficient performance was. It's very clear under Supreme Court case law that counsel . . . that the plaintiff . . . I'm sorry. My party's here. It's very clear under Supreme Court case law that the defendant had a right to have the analyst who performed the analysis of the fingerprints come into court and testify live, that it could not be shown by an out-of-court statement. And to that point . . . And I will get to your question, but I have to lay the foundation to answer your question.  Just . . . Well, I am . . . I'm not answering it until you interrupt it. Well, Judge Shutt, I am answering the question. Well, I think you are. You aren't answering it. You're telling me you're answering it. Just answer the substance of it. The deficient performance prong of the analysis, the Virginia Supreme Court glossed over that issue by saying that the tactical reasons for counsel's performance were that she had conducted an investigation and that she thought the fingerprints might be there on a particular occasion. As the district court pointed out, that was an unreasonable assumption because we know from the facts that the fingerprints were found on the back window of the house. The only evidence in the record of my client ever having been to the house was that he came through the front door, invited by the victim of the crime. It would have been unreasonable for counsel to assume that the fingerprints found on the back pane of the window would have been consistent with anything found with what my client had done. Even at this late date, I still do not understand what was introduced. You have the burden and I still don't understand what was introduced to indicate that the affidavit was a false statement, that she hadn't undertaken a reasonable investigation. I still don't understand what was wrong with the fingerprint evidence. It seemed to me that the counsel took the attack, and I don't understand why it wasn't a reasonable strategic judgment, to say, okay, I've got this evidence on the fingerprint and it's bad, and what I'm going to try to do is show that there were a whole lot of fingerprints or that there were a whole lot of things and make it seem to be a very circumstantial case, and, you know, that's what lawyers do all the time, and as a opposing counsel said, you do have the burden here, and I'm still not sure what was wrong with the investigation, what was she supposed to look at, what was she supposed to do, what was wrong with the fingerprint. I don't know. I mean, and you bear the burden on that. Well, if I may, I'll address what I think are those three points that you raised. First of all, what was wrong about the affidavit, and what was wrong about the investigation? We don't know, because… See, we have to look, because circuit courts are being reversed peculiarly on ignoring AEDPA standards. I understand that, Your Honor, and it is a very high standard. I don't shy away from the standard, but to Judge Gregory's point, to simply have an investigation does not tell us why the investigation showed that there was no use in bringing the issue up. I'm asking, that's not what I asked. I asked whether you introduced something, whether there was anything introduced before the district court to make it seem that the investigation was unreasonable. What else was she supposed to do? Well, I'd be glad to comment on that, because there is one way of showing that, and one way of showing that is by looking to a statute that the Commonwealth cited in the reply brief. The Commonwealth cited a statute, I believe it is section 19.2, 187.1. It's cited in the Commonwealth's reply brief. For the first time, I don't think it was ever mentioned below, but the Commonwealth says that under this statute, the remedy for raising an objection would have been to grant a continuance, and I don't think that's correct, Your Honor, when you look at the statute. So the statute, let's look at what the statute says, because it's very important to your question. The statute was enacted several years ago, but was revised in 2009, just after Melendez-Diaz was handed down, because in Melendez-Diaz, a question was whether these statutes, these notice and subpoena type statutes for crime lab analysts, whether those statutes passed constitutional muster. The Virginia legislature in 2009 held a special session to address that issue and passed a revised statute. The statute was then later revised in 2010, and I believe that was right before my client was tried. Now what does the statute say? Even if the Commonwealth can rely on it, I think it actually helps our argument. There are three things that the Commonwealth has to do under that statute. Number one, they have to present and serve on the defendant the fingerprint card. All right, now, you know, we're dealing with constitutionally ineffective assistance. And I, and let me explain what is. You and I both recognize that a state statute doesn't dictate constitutional standards. I would, I would certainly agree with that, Your Honor, but. We're dealing with Strickland here. Absolutely, Your Honor. But what does the statute require, and I think it. It may provide for whatever basis of state law that the Virginia Supreme Court. Sure, absolutely. And state law. Which is a constitutional standard. Yes, sir, Your Honor. But I think it informs our analysis because it was passed right after Melendez Diaz. It requires three things. They have to serve the fingerprint certificate on the defendant 28 days before trial. Number two, they have to attach to the certificate and notice to the defendant that he has a right to object to the introduction of the evidence if it's just going to be put in through the certificate. And number three, they have to file that with the clerk of court. Now what that tells me, and only then, only then is my client under an obligation to object or have waived the objection. What that tells me is that counsel had to be aware and should have been aware of the significance of the fingerprint analysis. And just brushing it under the rug, it's, it was a mistake, Your Honor. A significant mistake because it caused prejudice to my client. And it's, there's no continuance. The commonwealth says, well, if an objection had been raised, we could have just gotten a continuance. That's not what the statute says. The statute says the continuance would only be allowed if my client came in and objected by saying he never got the notice. Or if the analyst was not available. But if the commonwealth followed the procedure, which they have to, and my client objected, the evidence does not come in. That's the remedy. There was a question earlier when counsel was. All of this is going to simply blowing up the fingerprint into a question of large proportion. But, you know, I'm still, as a practical matter, I still do not know what exactly she should have done to investigate the fingerprint and why, was it, in what way was the fingerprint evidence ever defective? I mean, she did sign an affidavit and the affidavit might have been contradicted, but the affidavit wasn't contradicted. Your Honor, that's a great question. First of all, under Melendez-Diaz, Supreme Court is abundantly clear that we cannot presume the validity of scientific evidence just because it's on a, from a forensics crime lab. It's very, very clear on that point. And it even says, I believe it's that case that says even if Mother Teresa came in and Madam Curie came in and had a certificate with their name signed on it about this is scientifically accurate and I'm credible, the court would say you're still entitled to confrontation of that witness. Melendez-Diaz says this is going to happen. What happened here is going to happen frequently. And just reading from the opinion of the court, it says defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness, here the analyst, whose testimony defense counsel does not intend to rebut in any fashion. Generally, generally defendants do not object to the admission of drug certificates or here fingerprint certificates, most likely because there is no benefit to a defendant from such testimony. And so the ordinary case is that in Melendez-Diaz itself is that the defense counsel have to have a latitude not to go into the fingerprint analysis, not to insist on the forensic analyst being called. You know, if the counsel has asked for the continuance that you're saying, and you keep pushing down that road, the Commonwealth is going to call that forensic analysis for the forensic analyst there. And that's going to give, that's going to be one heck of a lot more persuasive than the investigator's very brief testimony. Because the investigator who testified to the certificate is no kind of expert. But the forensic analysis is. And the last thing you want is for a jury to hear of the forensic analyst rather than the investigator. Your Honor, I'd love to respond to that. You're substituting a strong state witness for a weak one and you'd have nothing, nothing to rebut it with. You'd just be sitting there dead in the water. Your Honor, I'd love to respond to that if I may. Sure. First of all, you said in the ordinary case. This was not the ordinary case. It was a bench trial and the defense counsel. Melendez-Diaz has antagonized the judge. Let me take that point because that's one of the points I wanted to respond to. How would it antagonize the judge? It was a very simple question of whether to let the evidence in or not let the evidence in. If the evidence didn't come in, he couldn't be convicted. There wouldn't be enough evidence there. And how would it antagonize the judge further? Remember, defense counsel in her closing to the court in the bench trial said the one piece, the one item of evidence that connected my client to this scene was the fingerprint. The fingerprint was already out there. Everybody knew about the fingerprint. But that's not counsel's fault. We try to charge everything up to deficient counsel. But this is not counsel's fault. It's the fault. It's a piece of evidence. Facts are stubborn things. Yes, sir. And you can't blame a lawyer for every piece of adverse evidence that is hard to get around, circumvent, rebut or something or whatever. It is there. It is sitting there. And it's not counsel's fault that the that the adverse evidence is there. But the evidence wouldn't be there if counsel had kept it out, which counsel had an absolute right to do under Melendez Diaz and under that Virginia statute, which followed Melendez Diaz. So I would disagree respectfully with your honor that Melendez Diaz and counsel's right to keep that out shows the deficient performance. She had a right. She had a right to keep it out if the proper procedure had been followed. Is there any evidence of that? There is no evidence that the common law. You just mean that she had the right to request a procedure to challenge it, correct? I believe she had a there was a constitutional right to confront the witness. But to confront it doesn't mean it doesn't come in. Well, if you agree with me. Oh, you say she had a right to keep it out. That's not that's not absolutely true. She had a right to the procedure, which might or might not have led to it being kept out. Isn't that correct? Yes, sir. And let me put any evidence in this record that it would have been kept out had the proper procedure been followed. I believe so. Absolutely. What is it? That evidence is that it was an out of court statement. No, no, no, no, no. But you could cure that, couldn't you? Your Honor, it would not be my client's obligation. No, no, no, no, no. Listen to me. If she had objected, would the court have said it's out? Yes. There's no way it can come in. Yes. Could the state not have said, Your Honor, we'll call the analyst to come in and testify on it. There's no evidence. No, no, no. Listen to my I said if if they'd said that it wouldn't have been automatically out of the case, would it? Well, if the analyst would it have been automatically out of the case? Not if the analyst would the answer be no. I'm trying to answer your question. Well, just answer it. If there had been an objection and the government goes, were you honor? We didn't realize it was it was not it was subject to that. We'll get the analyst here. Would the court go too bad? It's out under any and all circumstances. Well, I think if you listen, answer the question. You do not think you're a good lawyer. That is not an automatic out, is it? It's not. OK, and so and so now after the fact, is there any evidence that had that procedure been used? There was some deficiency. Is there any evidence in this record of that? I still don't know that I fully understand your question. Let me ask you this is very simple. Is there any evidence in this record that had the analyst testified to deal with the testimony? Is there any question? Any evidence of that in this record? No, but it's not required. And the reason why, whether or not it's required or not, we maybe we can determine. But I first wanted to get the factual answer from you. I understand your question. And the reason it's no, but is because under Melendez Diaz and under the constitutional right, my client doesn't have the obligation to show he is entitled to the privilege of cross examination and confront. No, nobody said that. That's we take that. I'm asking, is there evidence that had he been afforded that constitutional right? Is there any evidence in this record that it was a problem? You could have that in a case, couldn't you? Yes, you could come in with an affidavit going, Your Honor. Here's an affidavit that that fingerprint analyst we now know. Was corrupt or didn't handle evidence, probably could have that. Sure, but I could have that evidence against Mother Teresa and Madam Curie. And we know what the court says about that. I don't see that this lawyer is ineffective. And the problem that I have is you're going to go down the road to creating an unwaivable right under Melendez Diaz. And you want us to make a ruling that essentially is going to say that lawyers have to push on evidence with which there is nothing wrong and no real basis to question. And it's not just a right of investigation question because no, there's been no, I don't think there's been any case made that she didn't investigate this. I don't think that that has been, that her affidavit has been proven to be some kind of falseness or anything. And what you're going to end up is with a ruling that is adverse to the interest of criminal defendants. Because you're going to force lawyers to bring on forensic analysis who are going to just nail down adverse evidence in the eyes of a judge or in the eyes of a jury or whatever trier of fact there is. And you can't take those strategic judgments out of a lawyer's hands such that they are pushed by a court down the road of emphasizing in a case evidence that's adverse to their clients. And that's where you can go. And the Supreme Court has said that's where we don't want to go, particularly in an AEDPA case. This is, this is not ultimately a defendant friendly result, quite the opposite. Your Honor, I would respectfully disagree. I am out of time. I would love to respond to the comments, but I'm respectful of the court's time. And all I would say is this is an unusual case. It's not a precedent setting case. My client. Everybody says, then for the next 15 years we get the unusual case brought up as the paradigm. I still think that the district court here said it was an unusual case. It's not just me saying that. And I think that I would point to the language in Crawford that talks about the jury trial example. To dispense with the right of confrontation just because the evidence is presumably reliable is like dispensing with jury trial rights just because we think the defendant's guilty. It's hard for me at the end of the road to see the Virginia Supreme Court has been unreasonable. And it's, I mean that's a, that's a tough judgment. Surrender against a collective body such as the Virginia Supreme Court to say you've been unreasonable. Everybody knows the clearly established lawyers, Strickland, Melendez-Diaz, and to just say that the state Supreme Court was unreasonable in applying it. We better have reason to say it. We've been at our, circuit courts have been brought up short. Too many times. I believe those reasons have been set forth in our brief and in the district court's opinion. Thank you, Your Honor. Briefly, Your Honor. Of course, this isn't an, I would argue that this isn't an unusual case. This is like any case. That's really surprising. He argues it's the most unusual case he's ever seen in the U.N., the run-of-the-mill. It's a run-of-the-mill burglary and grand larceny case. And it's no different from the run-of-the-mill drug case where there's usually only two witnesses. One of which is the analyst who talks about, or the certificate which talks about what the substance is. And the other, which is the person who did the controlled buy. I mean, that usually is the only evidence in those cases. And so, this isn't anything unusual about this case. In fact, there was more evidence in this case of identity. There was the admission that he made. So, this wasn't an unusual case. And it is not, this question isn't about what his confrontation rights were. There's no dispute that he has the right to confront the witnesses. The question is whether she is ineffective, constitutionally ineffective, for choosing to waive that right because there was nothing to be gained under her reasonable, tactical judgment by having the analyst there. And she's entitled to make that decision. Well, if that was the sole decision, as you say, then why not just allow the certificate in, period, and that's it? Why the hearsay? Why allowing the police officer to do that? Wouldn't it be just, if you say it was just pristine, she had looked at it, if she had looked at it, and said, okay, it's insurmountable, okay, it's an exhibit, period, end of story. And then, that's it. Why would you allow the confrontational issue to go on further to allow someone to hearsay, bring it in? Wouldn't that be the answer? You just, it's an exhibit, it's admitted. If there's not, if there's a problem, if she knows that there's a problem with the analysis, then sure, she wants to have the person there. If she sees no problem with the analysis, then she doesn't want the person there. But you don't understand my question. Why wouldn't you just say, I don't object to the admission of the exhibit, which is a certificate, period? Why have the police officer give hearsay testimony about it? Well, the police officer was testifying about other things, though, Your Honor. Other things would have been excluded as to this certificate. That would be objectionable. That's what you do. You say, surely, objection. Can't talk about that. The document speaks for itself. And you try cases, sometimes jurors don't even understand certificates. I mean, that's the way, if you're going to minimize something and it's bad, and you want to be a good lawyer, you know, you say, OK, certificate's in, and then it gets, you hope that it gets muddled among the stacks of exhibits. Well, why would you have the police officer give hearsay testimony about it? That doesn't make sense. Well, because she was able to cross-examine the police officer and say, you're not an expert, and she did do that. I know, but that's the problem, though. If he was fumbling through trying to say, I'm giving credence to this, but what he said was this, no, I'm telling you what the experts said. You don't have to be an expert. I can get on the stand and say, if I'm allowed to say, you know what? Einstein said this was right. I'm not getting on trying to explain the theory of relativity myself. I'm just there at hearsay just saying, yeah, Al told me that this was exactly right. That's what he was doing. Well, so instead, what you do is you just say, certificate's in, it's an exhibit? I mean, it's not even consistent with that kind of theory if that's the strategy. If you want to help your client, I mean, that's what lawyers are paid to think for or appointed to think for their clients. Well, Your Honor, respectfully, that may have been the way that, the best way to do it, but it's not ineffective assistance of counsel not to do it that way. Well, you know, Judge Jackson said he's been, you know, he's thought for about 20 years. And, you know, we're appellate court and you're a lawyer, but he's seen a lot of cases. He said this was, this was an unusual case, unusual case. Part of me looking at that, I was just astonished when I looked at her summation, her summation. Well, Your Honor, there was no evidence proffered in this case that there was anything wrong. I mean, if there had been some evidence that there was some inadequate investigation or some evidence that there was something wrong with the fingerprint or some proffer, because it's their burden to show that, what the analyst's testimony would have been, something, then maybe it would have required a more specific response. But here, she says she did an investigation and there was nothing to the contrary. And it's, it's his burden on habeas to prove. Well, I got 10 years for stealing the television. But that's not the issue, Your Honor. I know it never is. I would just ask that you reverse the district court's decision. Thank you. We'll take a very brief recess and come back and hear a final case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Dennis W. Shedd